**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re<br><br>CITY LINE BEHAVIORAL HEALTHCARE, LLC,<br><br>Debtor. | Case No. 2:19-bk-12493<br><br>**Chapter 7** |
| GARY F. SEITZ, in his capacity as Trustee for City Line Behavioral Healthcare, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GREAT AMERICAN INSURANCE COMPANY,<br><br>Defendant. | **Adversary No.** _____<br><br><br><br>**COMPLAINT** |

Plaintiff Gary F. Seitz, in his capacity as Trustee for City Line Behavioral Healthcare, LLC ("Plaintiff" or the "Trustee"), by and through his attorneys Spiro Harrison, and by way of complaint against Great American Insurance Company ("GAIC"), hereby alleges as follows:

**PRELIMINARY STATEMENT**

1. This case relates to director's and officer's coverage under an insurance policy that GAIC issued to City Line Behavioral Healthcare, LLC, formerly known as Liberation Behavioral Health, LLC (the "Company").

2. GAIC issued GAIC Policy No. DPL2549775 to the Company for the policy period of July 22, 2016 to July 22, 2017 (the "2016-2017 GAIC Policy"). GAIC amended the 2016-2017 GAIC Policy, effective May 12, 2017, to increase the limit of liability to $3,000,000. GAIC renewed the 2016-2017 Policy for the policy period of July 22, 2017 to July 22, 2018 (the "2017-2018 GAIC Policy"). GAIC amended the 2017-2017 GAIC Policy, effective December 4, 2017,

to increase the limit of liability to $5,000,000. As of December 5, 2017, GAIC amended the 2017-2018 GAIC Policy to convert it to runoff coverage for the policy period of July 22, 2017 to December 5, 2023 (the operative "GAIC Policy").

3. On or about March 25, 2019, Pennsylvania state and federal officials announced indictments against eleven individuals (including several executives and employees of the Company), the Company, its wholly-owned subsidiary Liberation Way, LLC, and eight other entities associated with the Company (the "Indictments"). The Indictments allege, *inter alia*, that beginning in 2015, the Company defrauded health insurance companies by unlawfully paying the insurance premiums of patients seeking drug and alcohol dependence treatment, misrepresenting the residences of patients to obtain policies with the highest rates of reimbursement, operating as an unlicensed inpatient facility, engaging in a kickback scheme with Florida urine testing companies, billing the insurance companies for medically unnecessary and substandard procedures, and creating affiliated companies and bank accounts to conceal this activity.

4. On April 3, 2019, the Company provided GAIC with a Liability Notice of Occurrence/Claim ("Notice of Claim") seeking coverage in connection with the Indictments and related investigatory activities.

5. By letter dated May 10, 2019, GAIC (i) denied coverage under the GAIC Policy based on an exclusion for "Wrongful Acts" under the GAIC Policy that occurred after December 5, 2017, and further (ii) took the position that, with respect to any other claim, the GAIC Policy's applicable limit of liability is $1,000,000 based on purported misrepresentations made during the Company's application to increase the GAIC Policy's limit of liability from $1,000,000 to $3,000,000.

2

6. On or about April 17, 2019, the Company filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of Pennsylvania and Gary F. Seitz was appointed Trustee. By letter dated July 23, 2019, the Trustee placed the former directors and officers of the Company on notice that he intended to file suit against them in bankruptcy court.

7. On or about December 27, 2019, the Trustee wrote to GAIC requesting reconsideration of its denial of coverage based on GAIC's misunderstanding of the Wrongful Acts and its incorrect interpretation of the GAIC Policy as excluding those Wrongful Acts and Related Wrongful Acts (as those terms are defined in the GAIC Policy). GAIC failed to reconsider and/or change its coverage position.

8. On April 13, 2021, the Trustee filed suit in the United States Bankruptcy Court for the Eastern District of Pennsylvania against several former employees, officers, and members of the Board of Managers ("Board") of the Company in an action captioned *Seitz v. Gerner, et al. (In re City Line Behavioral Healthcare, LLC)*, Adversary Proceeding No. 21-00030-mdc (the "D&O Suit"). Among other things, the Trustee alleges breach of fiduciary duty claims, in connection with the same Wrongful Acts underlying the Indictments, against the Company's officers and Board members, each of whom are "Insured Persons" under the GAIC D&O Coverage (as defined below).

9. As a result of the Indictments and D&O Suit, both of which are "Claims" for a "Wrongful Act" under the GAIC Policy, the Company and "Insured Persons" have incurred and will incur "Losses" under the GAIC Policy. Based on GAIC's coverage position, however, there is no coverage for those Claims.

10. Plaintiff now seeks a declaration that: (i) the GAIC Policy covers Claims in connection with the Wrongful Acts underlying the Indictments and D&O Suit that occurred before

December 5, 2017 and any Related Wrongful Acts, and (ii) the Company is entitled to coverage under the GAIC Policy up to the policy limit for all such Claims. Plaintiff also seeks damages caused by GAIC's breach of contract and bad faith conduct in denying coverage under the GAIC Policy.

## JURISDICTION

11. This is an adversary proceeding in which the Plaintiff is seeking a declaratory judgment and damages for breach of contract and bad faith insurance practices.

12. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

13. This is a non-core proceeding pursuant to 28 U.S.C. § 157(c). Plaintiff consents to the entry of a final order or judgment by a U.S. Bankruptcy Judge.

14. Plaintiff has standing to bring this action pursuant to 11 U.S.C. § 323.

15. Venue is proper pursuant to 28 U.S.C. § 1409(a) and pursuant to 28 U.S.C § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

16. Plaintiff Gary F. Seitz, in his capacity as Trustee for the Company, is an attorney licensed in Pennsylvania and Delaware. He was appointed as the Trustee for the bankruptcy estate of the Company on April 17, 2019.

17. Defendant GAIC is a capital stock corporation organized under the laws of the State of Ohio. GAIC is engaged in the business of selling insurance products in multiple states, including in Pennsylvania.

**FACTUAL ALLEGATIONS**

A. **The GAIC Policy**

18. GAIC originally issued the GAIC Policy to the Company for the policy period of July 22, 2016 to July 22, 2017.

19. The GAIC Policy provides coverage under four Coverage Parts, including, as applicable here, Coverage Part A for Directors' and Officers' and Entity Liability (the "GAIC D&O Coverage").

20. The GAIC D&O Coverage contains four Insuring Agreements. As relevant here:

   a. The GAIC D&O Coverage's Insuring Agreement A states that, "[t]he Insurer shall pay on behalf of any Insured Person all Loss which the Insured Person shall be legally obligated to pay as a result of a Claim first made against an Insured Person during the Policy Period or the Discovery Period for a Wrongful Act, except for any Loss which the Company actually pays as indemnification."

   b. The GAIC D&O Coverage's Insuring Agreement C states that, "[t]he Insurer shall pay on behalf of the Company all Loss which the Company shall be legally obligated to pay as a result of a Claim first made against the Company during the Policy Period or the Discovery Period for a Wrongful Act."

21. The GAIC D&O Coverage contains the following relevant definitions:

   a. A "Claim" includes, *inter alia*, "a civil proceeding commenced by the service of a complaint or similar pleading" and "a criminal proceeding commenced by the filing of charges."

   b. "Loss" includes, *inter alia*: "(1) compensatory damages, punitive or exemplary damages, or the multiple portion of any multiplied damage award; (2) settlements; (3) judgments, including pre-judgment interest, post-judgment interest; (4) Investigative Costs; (5) Costs of Defense."

   c. A "Wrongful Act" is: "(1) any actual or alleged act, omission, error, misstatement, misleading statement, neglect, breach of duty by any Insured Persons in their capacity as such, . . . or any matter claimed against any Insured Persons by reason of their status as Insured Persons; [or] (2) with respect only to Insuring Agreement I.C., any actual or alleged act, omission,

error, misstatement, misleading statement, neglect or breach of duty by the Company . . . ."

22. Further, the GAIC Policy's General Terms provide that, "Related Wrongful Acts shall mean all Wrongful Acts that have as a common nexus, or are causally connected by reason of any fact, circumstance, situation, event or decision."

23. The 2016-2017 GAIC Policy initially had a limit of liability of $1,000,000 for claims under the GAIC D&O Coverage. Effective May 12, 2017, GAIC approved the Company for an increase in the limit of liability to $3,000,000, as reflected in Endorsement No. 17 to the GAIC Policy. On December 4, 2017, GAIC approved the Company for an increase in the limit of liability to $5,000,000, as reflected in Endorsement No. 6, effective December 5, 2017.

24. Endorsement No. 2 to the GAIC Policy also contained an "Additional Side Limit" of $1,000,000 for certain claims under the GAIC D&O Coverage. In this regard, the GAIC Policy provided that: "An Additional Limit of Liability in an amount not to exceed $1,000,000 is available solely for Loss resulting from any Claim made against any Insured Persons . . . and covered under Section I.A. of Coverage Part A. This Additional Limit of Liability is in addition to and not part of the Limit of Liability applicable to Coverage Part A as set forth in Item 4 of the Declarations."

25. The Company renewed the GAIC Policy for the policy period of July 22, 2017 to July 22, 2018 on substantially the same terms as the 2016-2017 GAIC Policy.

26. On December 11, 2017, Fulcrum Growth Fund III, LLC, Fulcrum Growth Fund III QP, LLC, and Vocap Ventures II, LLC closed on an acquisition of a controlling stake in the Company for a price of $41.6 million (the "Fulcrum Transaction").

27. Based on the Fulcrum Transaction, GAIC converted the GAIC Policy to runoff coverage pursuant to Section XIII of the GAIC Policy, which provides for continuation of coverage after the effective date of a change in control transaction, by executing mid-term Endorsement

Nos. 8 and 10, effective as of December 5, 2017. The GAIC Policy otherwise incorporated the terms of the 2017-2018 Policy and the $5,000,000 limit of liability with certain exceptions. A true and correct copy of the GAIC Policy is attached as <u>Exhibit A</u>.

28. As is relevant to this case, Endorsement No. 10 provides the following exception: "The Insurer shall not be liable to make any payment for Loss based upon, attributable to, directly or indirectly resulting from, related to, or in consequence of, or in any way involving: any Wrongful Act(s) actually or allegedly committed after 12/5/17."

**B.     The Trustee's Coverage Claim**

29. On March 22, 2019, the Pennsylvania Attorney General issued the Indictments. As noted above, the Indictments allege that the Company engaged in healthcare fraud, a kickback scheme, and related illegal behavior. A true and correct copy of the Indictments is attached as <u>Exhibit B</u>.

30. On April 3, 2019, the Company provided GAIC with the Notice of Claim providing notice of the Indictments. A true and correct copy of the Notice of Claim is attached as <u>Exhibit C</u>.

31. On May 10, 2019, GAIC's counsel responded to the Notice of Claim by denying coverage under the GAIC Policy in connection with the Indictments (the "GAIC Denial"). The GAIC Denial conceded that the Indictments constituted a covered "Claim" for a "Wrongful Act" under the GAIC Policy, stating that, "[b]ecause the Indictment is a criminal complaint which names [the Company] and some Employees as defendants, it constitutes a Claim for a Wrongful Act implicating coverage under the GAIC Run-Off Policy." Nevertheless, the GAIC Denial took the position that there is no coverage under the GAIC Policy because the GAIC Policy excluded coverage for Wrongful Acts after December 5, 2017, and the Indictments alleged Wrongful Acts taking place from "2015 through 2018." The GAIC Denial also took the position that, due to a

purported misrepresentation in connection with the Company's application to increase the GAIC Policy limit of liability to $3,000,000, the maximum aggregate limit of liability under the GAIC Policy is $1,000,000. A true and correct copy of the GAIC Denial is attached as <u>Exhibit D</u>.

32. By letter dated July 23, 2019, the Trustee put the former directors and officers of the Company on notice that he intended to file suit against them in bankruptcy court. A true and correct copy of the Trustee's Notice to Directors and Officers is attached as <u>Exhibit E</u>.

33. At or around the same time, by letter dated July 16, 2019, the Trustee requested insurance policy documents from GAIC relating to the GAIC Denial.

34. On October 23, 2019, GAIC provided insurance policy documents to the Trustee in response to his request.

35. On December 27, 2019, the Trustee wrote to GAIC demanding reconsideration of GAIC's declination of coverage under the GAIC Policy. Specifically, the Trustee asserted that, even if certain Wrongful Acts occurred after December 5, 2017, the Wrongful Acts that form the basis of the Indictments and the claims in the D&O Suit all relate back to earlier Wrongful Acts that pre-date December 5, 2017. Thus, any Wrongful Act after December 5, 2017 would constitute Related Wrongful Acts that relate back to the earlier, pre-December 5, 2017 Wrongful Acts. A true and correct copy of the Trustee's Request for Reconsideration of Coverage is attached as <u>Exhibit F</u>.

36. Following the Trustee's letter, GAIC did not reconsider its findings or coverage decision. As a result, there is no coverage for Claims for Wrongful Acts underlying the Indictments and the D&O Suit and no payment for Losses that GAIC is obligated to pay.

37. On April 13, 2021, the Trustee filed the D&O Suit against several former employees, officers, and Board members of the Company in the United States Bankruptcy Court

for the Eastern District of Pennsylvania.  A true and correct copy of the Complaint in the D&O Suit is attached as <u>Exhibit G</u>.

38.     GAIC's coverage position, including its complete denial of coverage, is in error and made in bad faith.

### C.      GAIC's Denial of Coverage Was Improper

#### 1.     GAIC Relied Upon Imprecise and Unreliable Evidence of Misconduct Beyond December 5, 2017 to Deny Coverage

39.     The Indictments that GAIC relied upon are imprecise in their allegations about the timing of the misconduct.  As GAIC noted, the Indictments allege, in a single, general allegation, misconduct occurring from 2015 through 2018.  The Indictments do not allege any specific instance of misconduct dating after December 5, 2017.

40.     The Indictments also allege, more specifically, payments to insurers occurring between November 2014 and January 2018 and payments received from health care companies between December 2014 and January 2018.  Those allegations provide no specific detail about what payments occurred in January 2018 or whether those payments were unlawful.  This imprecision and lack of specificity should have triggered scrutiny and investigation by GAIC prior to issuing a blanket denial of coverage on the basis of alleged conduct that continued "through 2018," but GAIC did not engage in any reasonable scrutiny or investigation.

41.     As GAIC is also aware, the GAIC Policy's runoff coverage was triggered by the Fulcrum Transaction, a change in control transaction that closed on December 11, 2017.  In the absence of specific allegations of misconduct continuing beyond the closing of the Fulcrum Transaction, GAIC should have scrutinized and investigated whether the misconduct continued after the Fulcrum Transaction closed, following the resulting change in control over the Company.  GAIC did not, however, do so.

42. Further, if GAIC had investigated the ongoing filings in the criminal cases, it would have been aware that the prosecution proceeded under the theory that the Wrongful Acts were complete by December 2017 when the Company changed control. For example, the August 16, 2019 charges against Jason Gerner alleged that the misconduct occurred "[f]rom in or about July 2015 through in or about December 2017."

43. Nevertheless, GAIC denied coverage based on a single, factually unsupported and inconsistent allegation in the Indictment that the Wrongful Acts continued "through 2018." GAIC's failure to investigate or scrutinize that finding is in error and in bad faith.

    2.    <u>GAIC's Interpretation of the GAIC Policy as Excluding Coverage if Any Wrongful Act Occurs After December 5, 2017 is Erroneous and Misleading</u>

44. The GAIC Denial also presented the Company with an erroneous and misleading interpretation of the GAIC Policy, by relying on an exclusion in Endorsement No. 10 that has no application to the Wrongful Acts underlying the Indictments (or the D&O Suit).

45. The GAIC Denial concluded that, even if the Company seeks coverage for Wrongful Acts that occurred prior to December 5, 2017, if any related Wrongful Act(s) occurred after December 5, 2017, coverage is excluded for all Wrongful Acts, including those that occurred prior to December 5, 2017. That position is unsupported by the language of Endorsement No. 10 and GAIC offered no basis or explanation for its interpretation.

46. The relevant exclusion in Endorsement No. 10 states: "The Insurer shall not be Liable to make any payment for Loss based upon, attributable to, directly or indirectly resulting from, related to, or in consequence of, or in any way involving: any Wrongful Act(s) actually or allegedly committed after 12/5/17."

47. Endorsement No. 10 does not preclude coverage for Wrongful Acts that occur prior to December 5, 2017, or Related Wrongful Acts that occur before or after December 5, 2017. GAIC's reliance on that coverage position to completely deny coverage is in error and in bad faith.

**D.  GAIC's Position That the GAIC Policy Limit of Liability Is $1,000,000 Is Factually and Legally Unsupportable**

48. The limit of liability under the GAIC Policy, as amended by the December 4, 2017 Endorsement No. 6, is $5,000,000.

49. GAIC asserted that that the Company—specifically its Chief Financial Officer, Branden Coluccio—made a knowing misrepresentation in February 2017 in connection with the GAIC Policy application to increase the limit of liability to $3,000,000 (before it was subsequently increased to $5,000,000), thus voiding the coverage increase.

50. Specifically, GAIC claimed that Coluccio executed a February 2017 warranty letter in which he represented that he was not aware of "any fact, circumstance or situation involving the Company or its Subsidiaries or the Directors or Officers of the Company or its Subsidiaries" that might give rise to a Claim under the GAIC Policy.

51. GAIC asserted that this warranty was false because, according to GAIC, Independence Blue Cross ("IBC") was "investigating [the Company] for insurance fraud" beginning in or around early November 2016, the Company was aware of that investigation, and failed to disclose it in the February 2017 warranty letter.

52. GAIC is incorrect about the Company's knowledge of IBC's activities in February 2017. To the Company's knowledge, sometime in or around November 2016, IBC began an audit of certain claims that the Company submitted to IBC. The Company complied with IBC's requests for information and otherwise cooperated with the audit. Contrary to GAIC's assertion, the Company was unaware of IBC conducting a "fraud investigation" in February 2017. The

11

Company's failure to report a claims audit in connection with the February 2017 warranty letter was not a misrepresentation that voided the increase in the GAIC Policy limit of liability.

### COUNT I
### Declaratory Judgment

53. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though set forth herein in their entirety.

54. GAIC has failed and/or refused to discharge its responsibilities and obligations under the GAIC Policy and in a manner consistent with the Company's rights.

55. The Company has at all times acted reasonably, in good faith, and within the scope and terms of the GAIC Policy.

56. The Company relied on the terms of the GAIC Policy as identifying coverage and the duties and obligations of GAIC to the Company in the event of a Claim and Loss, as those terms are defined in the GAIC Policy.

57. GAIC must provide coverage for the Indictments and D&O Suit as covered Claims under the GAIC Policy and is estopped from denying coverage to the Company or paying for Losses in connection with those Claims.

58. An actual and justiciable controversy has arisen and now exists between Plaintiff and GAIC concerning the GAIC Policy's coverage of and limit of liability for those Claims.

59. A prompt judicial determination is necessary and appropriate so that the parties may ascertain their rights, duties, and obligations under the GAIC Policy. The issuance of declaratory relief will terminate the existing controversy among the parties.

WHEREFORE, Plaintiff requests that this Court enter and declare judgment in its favor and against GAIC as follows:

      a.      The Company and the employees, officers, and Board members named in the Indictments and D&O Suit are Insureds under the GAIC Policy and specifically the GAIC D&O Coverage.

      b.      The Indictments and D&O Suit are covered Claims under the GAIC Policy and GAIC is responsible for paying for Losses in connection with those Claims.

      c.      The GAIC Policy's applicable limit of liability is $5,000,000 in connection with the Claims.

      d.      For such other and further relief that the Court, in its discretion, deems necessary, just, and appropriate under the circumstances.

## COUNT II
### Breach of Contract

60.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though set forth herein in their entirety.

61.    The GAIC Policy constituted a contract binding both the Company and GAIC.

62.    The Company has performed and satisfied all of the terms, conditions, covenants, and obligations imposed on and required of it under the terms of the GAIC Policy or by law.

63.    The Loss sustained by the Company is covered under the GAIC Policy.

64.    GAIC has breached its obligations under the GAIC Policy by, *inter alia*, delaying and refusing to provide coverage and pay for covered Losses under the GAIC Policy.

65.    GAIC's refusal to provide coverage and pay for covered Losses is a material breach of the GAIC Policy .

66.    As a direct and proximate result of GAIC's breach of the GAIC Policy, the Company has been deprived of the benefit of insurance coverage under the GAIC Policy for which

the Company paid substantial premiums, and the Company has incurred and continues to incur significant damages.

WHEREFORE, Plaintiff demands judgment in its favor and against GAIC for compensatory damages in an amount to be proven at trial, plus interest and costs, punitive damages, attorneys' fees, and such other relief as the Court may deem appropriate and proper under the circumstances.

## COUNT III
### Bad Faith under 42 Pa.C.S. § 8371

67. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though set forth herein in their entirety.

68. Through the Notice of Claim, the Company supplied GAIC with evidence of a Claim and connected Losses under the GAIC Policy.

69. Despite having received the Notice of Claim, GAIC breached its duty to deal in good faith and fairly with the Company by:

    a. Unreasonably and frivolously delaying and refusing to provide coverage and pay for covered Losses under the GAIC Policy;

    b. Not exercising reasonable care in investigating the Indictments fairly and objectively;

    c. Taking erroneous and misleading coverage positions that GAIC knew were unsupported by the GAIC Policy and applicable law;

    d. Refusing to reconsider its coverage position when the facts clearly demonstrated that GAIC had erroneously relied on a factually baseless position in support of its denial of coverage;

    e.    Acting with a dishonest purpose or reckless disregard for Company's rights under the GAIC Policy;

    f.    Avoiding payment to the Company for its own purposes and financial gain;

    g.    Intentionally and recklessly failing to perform its duties under the GAIC Policy and applicable law;

    h.    Unreasonably delaying the resolution of the D&O Suit by taking coverage positions that interfere with resolution of that Claim; and

    i.    Compelling the Trustee to institute this action to obtain benefits due and owing to the Company under the GAIC Policy.

70.    GAIC does not have a reasonable basis for refusing coverage of the Indictments and the D&O Suit, both covered Claims under the GAIC Policy, and delaying or refusing to provide benefits to the Company under the GAIC Policy.

71.    GAIC knows it has no reasonable basis for refusing coverage of the Claims but continues to refuse coverage anyway.

72.    Despite the Trustee's demand for reconsideration of the GAIC Denial, GAIC refused to investigate or scrutinize its faulty basis for denying coverage even though it was aware or should have been aware of information that plainly contradicted its basis for denying coverage.

73.    GAIC's failure and refusal to provide coverage constitutes bad faith within the meaning of 42 Pa.C.S. § 8371.

WHEREFORE, Plaintiff demands judgment in its favor and against GAIC pursuant to 42 Pa.C.S. § 8371 for damages, plus interest and costs, punitive damages, attorneys' fees, and such other relief as the Court may deem appropriate and proper under the circumstances.

Dated: May 10, 2021

/s/ *Jason C. Spiro*
Jason C. Spiro
SPIRO HARRISON
830 Morris Turnpike, 2nd Floor
Short Hills, NJ 07078
(973) 232-0881
jspiro@spiroharrison.com

*Attorneys for Plaintiff*